UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                                                      CASE NO.

**MARGARET MINOR SHAFFER, ET AL**                                  **15-102**

PLAINTIFFS

VERSUS

**CHEVRON, U.S.A., INC., ET AL**

DEFENDANTS

### REASONS FOR DECISION

      On September 23, 2015, Chevron Midcontinent, L.P., Chevron U.S.A, Inc., and Union Oil Company of California's (collectively "Defendants") Motion to Transfer Venue[1] and Margaret Minor Shaffer, Milhado Lee Shaffer, Jr., and Catherine Allen's (collectively "Plaintiffs") Motion to Remand and/or Abstain[2] came up for hearing. At the conclusion of the hearing, the Court took the matters under advisement.

**I. Facts**

      Plaintiffs own real property located in Terrebonne Parish, Louisiana. On August 31, 1944, Plaintiffs (or their predecessors) entered into a Louisiana oil and gas lease with Frank Wurloz ("1944 Lease"). On that same day, Wurloz assigned the 1944 Lease to Union Oil Co. of California

---

[1] P-3.

[2] P-10.

("UNOCAL").[3] UNOCAL conducted oil and gas operations on Plaintiffs' property under the 1944 Lease until 2003.[4]

From approximately 1991 to 1999, Chevron Midcontinent L.P. ("Chevron Midcontinent"), through its predecessor Carrollton Resources Corporation, operated a well on Plaintiffs' property pursuant to a farmout agreement.[5] Chevron U.S.A., Inc. ("Chevron USA") and Chevron Environmental Management Co. ("Chevron Environmental") managed the environmental liabilities of UNOCAL through a service agreement.[6]

In 2003, UNOCAL assigned a portion of the 1944 Lease to Forest Oil Company ("Forest"). Forest conducted operations on Plaintiffs' property until approximately 2010. On February 6, 2012, Forest merged into Sabine Oil & Gas Corporation (herinafter Forest and Sabine Oil & Gas Corporation are referred to as "Sabine").

On August 14, 2012, Plaintiffs[7] filed suit in the 32nd Judicial District for the Parish of Terrebonne[8] ("State Court") against the following defendants:

Chevron USA;

Chevron Environmental;

Chevron Midcontinent;

---

[3] These facts were undisputed by Defendants.

[4] Defendant's Motion to Transfer Venue. P-3.

[5] These facts were undisputed by Defendants.

[6] These facts were undisputed by Defendants.

[7] Initially, Margaret Minor Shaffer and Milhado Lee Shaffer, Jr. were the only plaintiffs. The parties subsequently filed a Second Supplemental and Amending Petition for Damages adding Catherine Allen as a plaintiff.

[8] Docket no. 167505, 32nd Judicial District Court for the Parish of Terrebone.

2

UNOCAL;[9]

Sabine;

Tommy F. Thomas; and

Roger L. Hebert.

Plaintiffs' Petition alleges damage resulting from oil and gas exploration, including the operation of waste pits, wells, gathering/commingling facilities; and the operation of a gas plant on a property adjacent to Plaintiffs' property. Plaintiffs seek monetary damages and restoration of their property, including the removal of equipment remaining on site. Plaintiffs' claims arise under Louisiana law. The State Court case has been pending for over three (3) years during which time the parties have exchanged thousands of documents and conducted numerous depositions.[10] Prior to the removal of this action, the State Court had set the following deadlines:

August 7, 2015 - Expert Witness Deadline;

October 1, 2015 - Discovery Completion;

November 30, 2015 - Trial.[11]

On June 22, 2015, UNOCAL sought leave from the State Court to pursue indemnity and cross-claims against Sabine as the successor in interest to Forest. In its moving papers, UNOCAL represented that the additional cross-claims against Sabine would not delay the case's resolution. UNOCAL also represented that should Sabine file for bankruptcy relief, the automatic stay would

---

[9] UNOCAL's parent company merged with Chevron Corporation in 2005. UNOCAL is an indirect subsidiary of Chevron Corporation. Chevron USA and Chevron Environmental are also indirect subsidiaries of Chevron Corporation.

[10] These facts were undisputed by Defendants.

[11] Trial was scheduled to last for three weeks. These facts were undisputed by Defendants.

not prohibit the Plaintiffs' suit from progressing but only stay the new cross-claim.[12] Based on these representations, the State Court entered a Judgment to that effect, permitting the filing of the cross-claim, but also recognizing that should Sabine file for bankruptcy relief, the stay would be inapplicable to the main demand.[13]

UNOCAL's cross-claim against Sabine asserts an indemnity agreement for damages it may owe to Plaintiffs.

On June 24, 2015, Plaintiffs' filed a Motion to Dismiss Sabine from the State Court proceedings.

On July 15, 2015, Sabine filed a voluntary petition for relief under Title 11, Chapter 11 of the United States Bankruptcy Code. The case is pending in the Southern District of New York.

Defendants filed a Notice of Removal of the State Court case to the United States District Court for the Eastern District of Louisiana on August 6, 2015. On August 19, 2015, the United States District Court referred the case to this Court. Defendants then filed a Motion to Transfer Venue to the Southern District of New York.[14] Plaintiffs filed a Motion to Remand to State Court or Abstain.[15]

Defendants argue that this Court has jurisdiction over the main demand because it is related to the administration of Sabine's bankruptcy case. As a result, Defendants assert that the bankruptcy

---

[12] *See* UNOCAL's Supplemental Memorandum in Support of Motion For Leave to File Cross-Claim Against Forest Oil Corporation and Third Party Demand Against Sabine Oil & Gas Corporation filed of record in the State Law case and P-10, Exh. 3.

[13] P-10, Exh. 3.

[14] P-3.

[15] P-10.

4

courts are the preferable forum to liquidate the main demand. In addition, Defendants seek the transfer of this case to the Southern District of New York where Sabine's bankruptcy is pending. In response, Plaintiffs aver that the federal courts lack jurisdiction over the main demand because it is not related to the administration of the Sabine bankruptcy and an independent basis for asserting jurisdiction does not exist. Plaintiffs seek a remand of the main action to State Court. In the alternative, Plaintiffs request that this Court abstain from deciding the State Case.

## II. Law and Analysis

### A. Remand

In opposition to Defendants' Motion to Transfer Venue and Removal, Plaintiffs have requested a remand of this adversary proceeding to State Court. The main demand against Defendants seeks enforcement of the 1944 Lease between Defendants and Plaintiffs. Specifically, Plaintiffs are demanding that Defendants honor the terms of the lease and restore the leasehold estate to its original condition. This claim is based on alleged environmental damage that continues to exist on the leasehold as a result of operations, including the existence of waste pits, wells, and damages from operations on adjacent property. Only UNOCAL has filed a cross-claim against Sabine. In that cross-claim, UNOCAL alleges that Sabine contractually agreed to indemnify and hold UNOCAL harmless for any damages arising out of the leasehold to Plaintiffs.

The parties do not dispute that all claims and cross-claims asserted in the State Case are based on Louisiana law.

A key factor in considering any request for remand is the court's basis for asserting jurisdiction over the removed claims. Federal law provides that courts must remand claims over which they lack subject matter jurisdiction:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.[16]

Therefore, the first factor to consider in deciding whether to remand is whether the Court has subject matter jurisdiction. If a court finds that it has subject matter jurisdiction, it has discretion to remand based on equitable grounds:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable grounds.[17]

Relevant equitable factors include, but are not limited to, economy, convenience, fairness, and comity.[18] The factors for equitable remand and discretionary abstention are similar and include:

> (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;
>
> (2) extent to which state law issues predominate over bankruptcy issues;
>
> (3) difficult or unsettled nature of applicable law;
>
> (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
>
> (5) jurisdictional basis, if any, other than § 1334;
>
> (6) degree of relatedness or remoteness of proceeding to main bankruptcy case;
>
> (7) the substance rather than the form of an asserted core proceeding;

---

[16] 28 U.S.C. § 1447(c). "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d).

[17] 28 U.S.C. § 1452(b). "An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title." 28 U.S.C. § 1452(b).

[18] *Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011) (citing *Carnegie Mellon Univ. Cohill*, 484 U.S. 343, 358, 108 S.Ct. 614, 623 (1988)); 28 U.S.C. §1334(c)(1).

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of nondebtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.[19]

### 1. Jurisdiction

Federal jurisdiction over removed actions may exist independent of a bankruptcy filing or as a result of it.[20] If jurisdiction exists independent of bankruptcy, it must be founded on a specific grant of authority. The parties have not pled a separate basis for federal jurisdiction over these claims. Tellingly, the case does not involve questions of federal law, nor are the parties diverse.

The sole basis for asserting jurisdiction over the claims by Plaintiffs against Defendants is alleged to exist by virtue of 28 § U.S.C. 1334. Under 28 U.S.C. § 1334, a federal court, including a bankruptcy court, may assert federal jurisdiction over any claims that "arise in" or are "related to" a bankruptcy. Defendants argue that Sabine's bankruptcy gives this Court jurisdiction over the claims UNOCAL asserts against Sabine as well as those Plaintiffs assert against UNOCAL and the other Defendants.

---

[19] *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 785 (E.D.Texas 2001) (citations omitted).

[20] 28 U.S.C. § 1334.

It is axiomatic that once a bankruptcy is filed, the federal courts, specifically the bankruptcy court, obtain jurisdiction over any claims against the debtor.[21] UNOCAL's cross-claim against Sabine falls within this parameter.

Equally clear is the principle that claims by nondebtors against nondebtor parties are outside of the federal jurisdiction created by 28 U.S.C. §§ 157 and 1334, unless the action is "related to" the administration of a debtor's case. The Plaintiffs' claims against Defendants, with the exception of UNOCAL, bear no relationship to the administration of Sabine's bankruptcy case. Other than UNOCAL, Defendants have neither asserted nor indicated they hold any claims against Sabine. Thus, the entire basis for asserting jurisdiction over this proceeding hinges on the "related to" nature of UNOCAL's cross-claim against Sabine and its alleged inextricable bond with the main demands.

"Related to" jurisdiction turns on whether the outcome of a proceeding could conceivably have an effect on a debtor's estate.[22] Although this description appears boundless, in truth a bankruptcy court's jurisdiction, while broad, is not limitless.[23] In analyzing "related to" jurisdiction, courts must be careful not to expand the whole in a universe where every action or claim is related to every other.

Historically, the exercise of "related to" jurisdiction is most often applied when the debtor is not a party to the litigation, but is in competition with third parties against a common obligor or asset. The most common example involves direct actions against an insurer of the debtor. When

---

[21] 28 U.S.C. § 157.

[22] *Pacor v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1994)

[23] *Northen Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 US 50, 102 S.Ct 2858, 73 L.Ed.2d 598 (1982); *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *Stern v. Marshall*, 131 S.Ct.2594, 180 L.Ed.2d 475 (2011).

third-party actions threaten to reduce the coverage available to creditors of the debtor or the debtor itself, bankruptcy courts may assert jurisdiction over the third-party claims in order to protect insurance coverage limits. An example of this principle is illustrated by the case of *MacArthur Company v. Johns-Manville Corp.*, 837 F.2d 89 (2nd Cir. 1988).

Johns-Manville Corp. ("Manville") filed for bankruptcy protection. At the time of its filing, Manville was involved in thousands of personal injury actions. Its distributor, MacArthur, was also named in many of the same actions. MacArthur held a contractual right to call on Manville's insurance for any action brought as a result of asbestos exposure. As a result, MacArthur sought to sue Manville's insurer directly. The Manville Bankruptcy Court enjoined MacArthur's suit based on "related to" jurisdiction. In asserting jurisdiction over the claims by MacArthur against the third-party insurer, the Court found that if MacArthur's actions were allowed to proceed, a race to the courthouse would ensue between MacArthur and those holding personal injury claims against Manville. As each pursued the same insurance coverage, policy limits might be exhausted resulting in an uneven distribution to like situated parties. Therefore, in order to protect the totality of the coverage limits, the Manville Court enjoined any actions by MacArthur against the insurers. In doing so it hoped to ensure an equal distribution of assets, in this case coverage, to all claimants.

It is also notable that the Manville Court refused to exercise jurisdiction over the claims against MacArthur. MacArthur was being pursued by personal injury claimants due to exposure from asbestos manufactured by Manville. It also held a contractual right to pursue not only Manville's insurers but claims in contribution against Manville. Nevertheless, the court declined to enjoin the plaintiffs' actions against MacArthur because they were not related to Manville's bankruptcy case. In so holding, the Manville court distinguished claims by the personal injury

claimants against MacArthur from those by MacArthur against Manville. Explaining that any judgments against MacArthur were merely the precursor to a claim by MacArthur against Manville, the court reasoned that any action against the debtor would turn on its contractual and legal responsibilities to MacArthur, something wholly different from the actions of the plaintiffs against MacArthur.

The facts of this case are also closely aligned with *Pacor, Inc. v. Higgins.*[24] In *Pacor*, Higgins filed suit in Pennsylvania state court against Pacor, Inc. ("Pacor") based on personal injuries due to asbestos exposure. Pacor was a distributor of asbestos manufactured by Manville, and Pacor filed a third-party demand against Manville.

After Manville filed a voluntary petition for relief, Pacor removed the entire case to Federal District Court asserting "related to" jurisdiction. Higgins then moved to remand the main cause of action against Pacor. Pacor argued that the liquidation of Higgins' demand against it would necessarily bear on Manville's liability to Pacor, and as a result, the two (2) actions were related. The District and Third Circuit Court of Appeals disagreed. The Third Circuit found that it did not have subject matter jurisdiction over the suit by Higgins against Pacor. In holding that the action of Higgins against Pacor could be severed from Pacor's suit against Manville, the Third Circuit opined:

> [T]he primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not "related to" bankruptcy within the meaning of section 1471(b). At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins-Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party

---

[24] *Pacor, Inc. v. Higgins*, 743 F2d 984 (3rd Cir. 1984).

to the Higgins-Pacor action, it could not be bound by res judicata or collateral estoppel.[25]

Another instructive example is found in the opinion entered in *In re Federal-Mogul Global, Inc.*, 282 B.R. 301 (Bankr.D.Delaware 2002). The defendants sold products that contained asbestos. Prior to Federal-Mogul's request for bankruptcy relief, Federal-Mogul was named co-defendant in many state court suits for personal injury. When Federal-Mogul filed for bankruptcy relief, the defendants attempted to remove the claims filed against them and Federal-Mogul to Federal court, citing "related to" jurisdiction. The defendants argued that because they and Federal-Mogul were allegedly liable for the same damages, any action against them would necessarily affect Federal-Mogul's estate by liquidating the claim. In response to a request for remand, the Court severed the actions against Federal-Mogul and denied "related to" jurisdiction as to the claims against the other defendants.[26] The Court reasoned:

> As others have noted before, a broader understanding of "conceivable" as defining bankruptcy jurisdiction produces an unworkable rule and bizarre conclusions regarding Congressional intent in the bankruptcy jurisdiction statute. "The optimist may argue that anything is 'conceivable,' and practical definition of this term of art must be tempered with reasonableness."... "common sense cautions against an open-ended interpretation of the 'related to' language "in a universe where everything is related to everything else."... Approving *Pacor*, the Supreme Court warned that "a bankruptcy court's 'related to' jurisdiction cannot be limitless." Celotex, 514 U.S. at 308, 115 S.Ct. 1493.[27]

In support of their position, Defendants cite *A.H. Robins*, 880 F.2d 694 (4th Cir. 1989). In *Robins*, the debtor, its insurers, officers and directors were sued. The officers and directors held absolute rights of indemnification against Robins and its insurers. Thus, an action against the

---

[25] *Pacor,* 743 F.2d at 995.

[26] In an abundance of caution, the Court also based its decision on the factors for discretionary abstention.

[27] *In re Federal-Mogul Global, Inc.*, 282 B.R. at 307.

11

officers and directors would require Robins' insurers to defend and pay for any judgment. Since Robins' insurance was an asset of the estate, any depletion of the policy through demand for coverage by the officers and directors would necessarily deplete an asset of Robins. This would leave fewer dollars to pay similarly situated personal injury claimants with only a claim against the debtor. As a result, the Court enjoined actions by third parties against Robins' officers and directors.

In this case, Defendants are not the officers, directors, or insurers of Sabine, but separate legal entities with no relationship to Sabine based on insurance or employment. They are being sued based on their own contractual and legal obligations to Plaintiffs.[28]

Plaintiffs' actions against UNOCAL arise out of the 1944 Lease and UNOCAL's operations on real (immovable) property located in Terrebonne Parish, Louisiana. Under the terms of that lease, Plaintiffs allege that UNOCAL owes them a duty to clean up and return the leasehold estate to its original condition. The facts pled by Plaintiffs assert that UNOCAL operated on Plaintiffs' property from 1944 to 2003 or for six (6) decades. During that period, UNOCAL is alleged to have operated waste pits, wells, gathering/commingling facilities, and a gas plant most of which were shut in and abandoned prior to 2003.[29] In 2003, UNOCAL alleges that it assigned its interests in the

---

[28] The Court admits that there is a small portion of Plaintiffs' claim that seeks to hold Defendants responsible for the activities of Forest on the leasehold. However, based on the terms of the lease, UNOCAL is being asked to answer for these activities under its contract with Plaintiffs.

[29] Specifically, Plaintiffs assert that Well #337927 was drilled and operated by UNOCAL through March 1975, when it was plugged and abandoned. A salt water disposal well on Plaintiffs' property was operated by UNOCAL until plugged and abandoned in December 1986. Well #133347 was completed in August 1970 and was operated by UNOCAL until it was plugged and abandoned in August 1975. Four pits associated with UNOCAL's operations are also alleged offenders. Additionally, the Houma Gasoline Plant No 45, located on property adjacent to Plaintiffs' land, is alleged to have caused damage. UNOCAL is still the record title holder to that property. According to Plaintiffs' allegations, only three (3) wells, #135960, 970098, and 135930, were ever operated by Forest. Well #135930 was plugged and abandoned by Forest two (2) years after assignment and SWD well #2 five (5) years later.

leasehold to Sabine. Under the terms of that assignment, UNOCAL alleges that Sabine indemnified it for any damages that might arise as a result of operations under the lease. Like the parties in *Pacor, Federal-Mogul,* and *MacArthur*, UNOCAL argues that the liquidation of Plaintiffs' claims will determine Sabine's liability to it under their contract. Although UNOCAL avers that any action against it under the lease by Plaintiffs will trigger Sabine's liability, as the above cases illustrate, the mere fact that Plaintiffs' claims give rise to a cross-claim by a third party against a debtor, does not render Plaintiffs subject to this Court's jurisdiction.

The contractual obligations between UNOCAL and Sabine form the basis of UNOCAL's cross-claim. Plaintiffs have not asserted claims against Sabine and have dismissed Sabine from the State case. Thus, any judgment against UNOCAL by Plaintiffs falls short of an absolute casting of Sabine in judgment. The fact remains that UNOCAL and Sabine have a separate contract governing their relative responsibilities. What responsibilities UNOCAL and Sabine owe each other is a separate and distinct issue from those presented by Plaintiffs against UNOCAL. It cannot be said that any determination of liability against UNOCAL acts as an automatic determination of liability against Sabine. Further, since the Defendants, other than UNOCAL, have no claims against Sabine, nothing in Plaintiffs' actions against them can possibly affect Sabine's bankruptcy estate. As to UNOCAL, its actions against Sabine fall squarely within this Court's jurisdiction. However, this Court's jurisdiction ends with that claim.

UNOCAL also argues that under Louisiana law parties in the chain of title on a mineral leasehold can be held liable *in solido* for damages sustained on the property. While Louisiana law does provide for *in solido* liability, Plaintiffs have dismissed any claim against Sabine. Thus, their action will not result in *in solido* liability against Sabine. Further, any claims by UNOCAL or the

13

other Defendants against each other will be based on their rights in contribution. Those rights are based on the relative conduct of each in relation to the damages sustained. Again, UNOCAL's claims against Sabine can be severed and tried at a later date.[30]

Defendants also contend that this Court has jurisdiction because the adjudication will affect property of the estate. Plaintiffs original Petition asks for removal of equipment located on the leasehold. UNOCAL alleges that some of that equipment is now owned by Sabine. At the hearing, Plaintiffs agreed that they would amend their Petition to seek only monetary damages against UNOCAL for failure to remove the equipment rather than asking for removal of any equipment belonging to Sabine.[31] Plaintiffs have not asserted claims against Sabine, and property of Sabine's estate will not be affected by allowing Plaintiffs' claims to go forward in State Court.

For the reasons stated above, this Court finds that federal subject matter jurisdiction is lacking over Plaintiffs' claims.[32]

---

[30] Of additional concern to this Court is the Supreme Court decision of *Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). In *Stern,* the Supreme Court held that bankruptcy courts do not have the constitutional authority to decide state law claims that have no bearing on the claims allowance process. The actions against the Defendants are based on their relationship with Plaintiffs and their conduct. Thus, it is arguable that this Court lacks the constitutional authority to decide Plaintiffs' claims against non-debtor third parties like UNOCAL and the other defendants. However, because this Court concludes that it lacks subject matter jurisdiction over these claims, it declines to decide this issue.

[31] Of particular note on this point, UNOCAL has failed to seek relief from the automatic stay in Sabine's bankruptcy case to honor its obligations under the lease. This Court finds it doubtful that the Bankruptcy Court in the Southern District of New York would deny UNOCAL the ability to remedy an environmental problem at no immediate cost to the debtor. If Sabine owes UNOCAL reimbursement, that liability can be determined at a later date. However, in the case of an environmental problem, the cost of clean up, if found necessary, will not be reduced by delay.

[32] Because this Court will remand Plaintiffs' action, the other factors concerning abstention are not discussed. However, within the discussion of jurisdiction, this Court also finds that 1) remand will not affect the efficient administration of Sabine's estate; 2) the matter involves only state law; 3) the proceeding was commenced in state court; 4) there is no other federal jurisdictional basis for the suit; 5) the action is not core in nature; 6) the main action is only remotely related to the bankruptcy case; 7) severance of the action against the debtor is both possible and will not hamper resolution of the remanded causes of action; 8) nondebtor parties are also involved in the Plaintiffs' demand; 9) the removal of this action involves forum shopping by UNOCAL and the other Defendants; 10) comity weighs in favor of a State court resolution; 11) other parties to the action will not be

**B. Transfer of Venue**

Defendants seek transfer of venue to the Southern District of New York on the removed causes of action and Plaintiffs' Motion to Remand or Abstain. Pursuant to 28 U.S.C. § 1412, "A district may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Defendants assert that this Court should not rule on jurisdictional issues contained in Plaintiffs' Motion to Remand or Abstain before transferring this matter because "the bankruptcy court administering the debtor's estate would be best suited to determine jurisdictional issues."[33] This Court finds that it is well qualified to rule on bankruptcy jurisdiction as it does so frequently.

A request to transfer venue is discretionary. The statute provides that a court "may" transfer a case to another district. In this case, transferring Plaintiffs' claims would not remedy the jurisdictional defects. "Judicial economy itself does not justify federal jurisdiction."[34]

Plaintiffs claims involve only Louisiana leases, Louisiana property, activities in Louisiana, and Louisiana law. This case has been pending in Louisiana State Court for over three (3) years. The majority of document production and depositions have been completed as the deadline for completion of discovery was scheduled for October 1, 2015. The trial date that has been set for quite some time is quickly approaching. Therefore, this Court finds that the Louisiana State Court

---

prejudiced; and 12) Plaintiffs have requested a jury trial. Conversely, 1) the issues presented do not involve difficult or unsettled law; and 2) retention of the case will not create a burden on the bankruptcy court's docket.

[33] P-3.

[34] *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984).

is the best and most efficient venue to hear Plaintiffs' claims.[35] As a result, Defendants' Motion to Transfer Venue is denied.

### C. Severability

Remand of the Plaintiffs' claims, will sever any third-party claims of UNOCAL against Sabine. The Court must consider whether Sabine is an indispensable party under F.R.C.P. 19 to the main demands. There are four (4) relevant factors:

1) Would a judgment without Sabine prejudice Sabine or other parties?

2) Can protective provisions in the judgment lessen or avoid prejudice?

3) Can an adequate judgment be rendered?

4) Will the parties have adequate remedies?[36]

State Court is the alternative forum for the claims as the State Court has jurisdiction over all the claims. Although a trial in State Court will not involve Sabine, nor can it address the claims UNOCAL has against Sabine, the severance of that action will not prejudice UNOCAL. Following a resolution of the State case, UNOCAL will retain any and all rights against Sabine and may pursue those in connection with Sabine's bankruptcy case.[37]

The action by Plaintiffs against Chevron USA, Chevron Midcontinent, Chevron Environmental, Thomas, and Hebert will have no effect on Sabine's bankruptcy estate. As to Plaintiffs' actions against UNOCAL, the main demand is completely separate from any action by

---

[35] Having found that remand of the main demands to State Court is appropriate, Plaintiffs' alternative requests for abstention are moot.

[36] *Shelton v. Exxon Corp.*, 843 F.2d 212, 216 (5th Cir. 1988).

[37] For example, UNOCAL may file a proof of claim in Sabine's bankruptcy case. It may also seek relief from the automatic stay to liquidate its claims against Sabine in conjunction with the main demand.

16

UNOCAL against Sabine. Further, as Plaintiffs have agreed to amend their Petition so that they do not demand removal of any property of Sabine's estate, Sabine is not affected by Plaintiffs' demands. Given Plaintiffs' representation that they will not seek removal of Sabine's equipment from the leasehold, protective provisions are not necessary. The relative responsibilities and obligations between UNOCAL and Sabine can be efficiently and effectively decided after the main demands are concluded in State Court.

An adequate judgment can be rendered by the State Court on the demands by Plaintiffs against UNOCAL, Chevron USA, Chevron Midcontinent, Chevron Environmental, Thomas, and Hebert . The parties will have adequate remedies available to them even if Sabine is not a party to the proceedings. Should the State Court find that damages are due to Plaintiffs, Defendants are answerable with or without Sabine's involvement based on their own conduct, contractual, and legal relationships with Plaintiffs. With regard to Plaintiffs' request for environmental clean up, to the extent that request involves property belonging to Sabine, Plaintiffs have agreed to seek money damages from UNOCAL. Defendants on the other hand have the ability to seek relief from the automatic stay to perform should a court find they have breached an obligation to restore and order restoration instead of damages.

### D. Venue of UNOCAL v. Sabine

UNOCAL's claims against Sabine will remain in this Court and be stayed pending the outcome of the State Court litigation. Upon the conclusion of the litigation in State Court, UNOCAL may re-urge its Motion to Transfer Venue.

### III. Conclusion

For the reasons assigned above, Plaintiffs' Motion to Remand its claims against Chevron USA, Chevron Environmental, Chevron Midcontinent, UNOCAL, Thomas, and Hebert is granted in part and denied in part. The actions by Plaintiffs against these Defendants are remanded as are any cross-claims between them. However, the third-party demand by UNOCAL against Sabine is severed from the foregoing actions and retained by this Court. This Court will stay any prosecution on the action pending the entry of judgment on the remanded matters. The Motion to Transfer Venue is denied. The Court will enter a separate Order in accord with these Reasons.

New Orleans, Louisiana, October 14, 2015.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge